

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | |
|---|---|
| **JERRY COLEMAN,** ) | **Docket No.: 2015-07-0445** |
| Employee, ) | |
| **v.** ) | **State File Number: 97922-2015** |
| **ARMSTRONG HARDWOOD** ) | |
| **FLOORING,** ) | **Judge Allen Phillips** |
| Employer, ) | |
| **And** ) | |
| **AGRI GENERAL INS. CO.,** ) | |
| Insurance Carrier. ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on May 31, 2016, upon the Request for Expedited Hearing filed by the employee, Jerry Coleman, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Coleman seeks medical benefits, specifically a panel of physicians to evaluate an alleged hearing loss. The employer, Armstrong Hardwood Flooring, contends Mr. Coleman did not provide proper notice of his injury and that he failed to establish a causal connection between his hearing loss and his employment at Armstrong.[1] Accordingly, the central legal issues are: 1) whether Mr. Coleman provided adequate notice of his claim and, 2) if so, is he entitled to a panel of physicians. For the reasons set forth below, the Court finds Mr. Coleman provided proper notice of his alleged hearing loss and that he is entitled to a panel of physicians.[2]

---

[1] Armstrong also asserted Mr. Coleman had not sustained any permanent vocational disability and that he "voluntarily retired." The issues regarding entitlement to and the extent of permanent disability benefits are not at issue in this Expedited Hearing.

[2] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

## History of Claim

Mr. Coleman is a sixty-two-year-old resident of Madison County, Tennessee. He completed the eighth grade. His work history consists of farming, concrete work, driving trucks, and working in factories, including two stints at Armstrong. His first period of employment spanned November 8, 1996, through November 20, 2009, when Mr. Coleman worked as a material handler. This position included him having to drive a "dump truck" near a machine that pulverized waste wood into saw dust. Mr. Coleman testified the machine, what he called "the hog," was "a big 'ole machine" that was "real, real loud." He testified he worked near the machine for all of his first thirteen years at Armstrong. After leaving Armstrong in 2009, Mr. Coleman drove semi-trucks.

When Mr. Coleman returned for his second stint at Armstrong, a time that spanned May 6 2013, to June 16, 2015, he again worked near "the hog." He also worked a job that required him to "feed" wood into a sanding machine. He testified the "hog" machine was outside the plant; the sanding machine was inside. He claimed he wore hearing protection at Armstrong but admitted his ear plugs would "fall out" on occasion but, when they did, he would obtain replacement plugs.

Over his years at Armstrong, he noticed a "lot of winding" in his ears that kept him awake at night. Mr. Coleman testified that, at some time while still employed with Armstrong, he "talked to Mr. Stepp" regarding his hearing issues. Mr. Coleman testified he spoke only to Mr. Stepp because he was the Armstrong employee responsible for workers' compensation. Mr. Stepp "sat down with [him] and [they] filled out some papers." Mr. Stepp was to "send [him] to someone" to "get [his hearing] checked"; Mr. Stepp never did so.

Mr. Coleman voluntarily left Armstrong on June 16, 2015. He now draws Social Security retirement benefits. At the time of the hearing, Mr. Coleman testified his hearing, "really ain't that good." His right ear is now, as it has been, much worse than the left.

On cross-examination, Mr. Coleman admitted working in trucking, farming, construction, and factories during his working life. He also responded to extensive questioning regarding periodic medical treatment, beginning in 2007, and extending to 2013, for problems with ear infections and ringing in his ears. Mr. Coleman could not remember the details of specific visits to health care providers, but described ongoing problems with his sinuses that affected his ears. He sought care during both his time at Armstrong and when he was employed elsewhere.

Armstrong confronted Mr. Coleman with a report from a pre-employment physical examination performed before his second stint at Armstrong. When asked about his answers contained in the "Audiometric Examination" section of the report, Armstrong

2

established someone answered affirmatively to questions regarding whether Mr. Coleman was exposed to firearms, loud music, "noisy" jobs, and whether he experienced ringing in the ears, ear wax build-up, and hearing "better in one ear than in the other." (Ex. 1 at 6.) Mr. Coleman denied providing the affirmative responses regarding exposure to firearms or loud music; he did not contest the other responses. The report noted a rating of "good" in response to "how do you rate your hearing?" Mr. Coleman admitted signing the form but denied he wrote or personally marked any answers. He also noted other positive responses were correct, such as whether he had treatment for hypertension and that he needed glasses. He did not recall reading the form, but admitted it contained a statement that, by signing the form, he certified all answers were true and correct.

Upon redirect examination, Mr. Coleman noted the handwritten information on the form was not in his handwriting. The information indicated, among other findings, that he had no "hearing impairment." (Ex. 1 at 3.)

Armstrong offered a "Hearing Test History," which memorialized the results of Mr. Coleman's hearing tests during his employment at Armstrong. (Ex. 4.) It also offered Mr. Coleman's last hearing tests from November 4, 2014. (Ex. 3.) The last hearing test showed the following: severe hearing loss at high pitch sounds and moderate hearing loss in the speech range in the right ear, and moderate hearing loss with high pitch sounds and mild hearing loss in the speech range for the left ear. The report noted a "Standard Threshold Shift," indicating a change in his "baseline test." Mr. Coleman signed the form but does not know what the test results "mean." Armstrong offered no evidence of anyone providing Mr. Coleman an interpretation of the results at the time.

Armstrong offered medical records from the Jackson Clinic that recorded Mr. Coleman's long-standing treatment from clinic providers. Armstrong pointed specifically to records beginning in 2007 and going forward as having a bearing on the hearing issues. The records are quite voluminous.[3] However, upon review, the Court did note many references to ear infections and ear pain.

Armstrong questioned Mr. Coleman regarding when he became aware of his hearing loss. At the Expedited Hearing, Armstrong confronted Mr. Coleman with his deposition testimony that he "never really noticed" any hearing loss until he left Armstrong. Specifically, Mr. Coleman stated he saw a television advertisement of his attorney regarding hearing loss and it was then he related the hearing loss to his time at Armstrong. When confronted with the apparent contradiction between talking to Mr. Stepp in 2015 as opposed to the time he saw the television ad, Mr. Coleman maintained his position that he told Mr. Stepp of his hearing loss. He repeatedly did so. Additionally,

---

[3] The Court notes many records predating 2007, the purported relevant time frame. Also, as pointed out by the Court at the hearing, the parties did not sequentially number the records as required by Rule 0800-02-21-.16(6)(c) (2015) of the Tennessee Compilation Rules and Regulations. The Court admonishes that the party offering the records should do so in the future or risk the Court refusing to consider the evidence.

when confronting Mr. Coleman with his deposition testimony on cross-examination, Armstrong revealed:

> Because on page 95 I asked you, "And so, before seeing that TV commercial you hadn't reported a work injury, anything about your hearing to anybody at Armstrong?"
> Answer: I had it [sic] reported to Armstrong.
> Question: Before November you had?
> Answer: Well, what I'm saying, he was to do something.

Mr. William Stepp, Environmental Health and Safety Coordinator, testified for Armstrong. He explained Armstrong follows an OSHA-compliant hearing protection program that requires employees to wear hearing protection and submit to routine hearing tests. He does not recall Mr. Coleman speaking to him regarding his hearing loss but does not deny it happened; he simply does not recall. If Mr. Coleman reported any hearing loss, then Mr. Stepp would have completed a report according to Armstrong's protocol for handling workers' compensation claims. His recollection was that a call from the Bureau regarding the filing of a Petition for Benefit Determination (PBD) was his first knowledge of Mr. Coleman claiming hearing loss. However, he does not recall when he received the call.

Mr. Stepp confirmed Mr. Coleman worked around the "hog" machine. The audiometric testing performed near the machine indicated a noise level of such magnitude that employees should wear hearing protection when around it. Both the material handlers and sander/feeder jobs required employees to wear hearing protection.

Mr. Stepp testified any "shift" reported on a hearing test was to be discussed with the employee but he does not know what was told to Mr. Coleman. On cross-examination, Mr. Stepp stated he could not interpret hearing test results and, agreed Mr. Coleman also was not qualified to interpret such results. He confirmed the 2013 pre-employment physical contained no indication of hearing issues.

Ms. Pat McKnight testified she worked for Armstrong in Human Resources. She confirmed Mr. Coleman voluntarily quit Armstrong on both occasions. (Exs. 5, 6, 9 and 10.) She also produced job descriptions for both the "Material Handler" and "Sander/Feeder" positions. (Ex. 7 and 8.) She was unaware of any report by Mr. Coleman of a hearing loss.

Based upon this evidence, Mr. Coleman argued he is entitled to a panel of physicians to evaluate his hearing loss. In 2015, he told Mr. Stepp he was aware of hearing issues and this provided Armstrong the required notice under law. At this point, because there is no medical proof, any hearing test is "irrelevant." A physician must address the degree of hearing loss and its cause.

4

Armstrong countered that Mr. Coleman worked in other employments over his working life, including construction and other factories; he was employed at Armstrong for "only" fifteen years. Additionally, he was sixty-two years of age, had a history of ear infections, and high blood pressure, all risk factors for hearing loss. Because these factors prevent the Court from being able to differentiate between potential causes of his hearing loss, Mr. Coleman has not shown a likelihood of prevailing at a hearing on the merits. Moreover, Armstrong's first notice of an alleged hearing loss came with the filing of the PBD, almost one year after the hearing test of November 4, 2014, revealed a standard threshold shift. Mr. Coleman knew of potential hearing issues in 2014 and should have provided Armstrong notice of his claim within thirty days after the test.

## Findings of Fact and Conclusions of Law

### *Standard applied*

Because this case is in the posture of an Expedited Hearing, Mr. Coleman need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

### *Notice*

Mr. Coleman must establish he provided adequate notice of his alleged hearing loss before the Court might compel Armstrong to provide benefits. Because he alleges a gradually occurring injury, Mr. Coleman must satisfy the following notice requirements of Tennessee Code Annotated section 50-6-201(b) (2015):

(b) In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within thirty (30) days after the employee:
(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

5

(2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

In this case, Mr. Coleman testified he spoke with Mr. Stepp while still employed by Armstrong. Mr. Stepp candidly admits no recollection of that conversation but does not deny it occurred. Hence, the Court is left with no other evidence except that Mr. Coleman reported his hearing issues to Armstrong. In making this finding, the Court considered Mr. Coleman possesses an eighth grade education and that his work history consists of manual, unskilled labor, or perhaps semi-skilled labor at best. Though these factors do not excuse him from providing proper notice, they do militate against his ability to recall the specific date he talked with Mr. Stepp. At a minimum, his intellectual challenges could inhibit his ability to effectively communicate the precise nature of his claim. Nevertheless, the statute itself does not require an artful communication by an employee, but rather "plain and simple language" detailing, among other basic information, the "nature" of the claim. Tenn. Code Ann. § 50-6-201(b) (2015). More importantly, Mr. Coleman's vocational challenges do not supplant his credibility. He expressed with certainty, on multiple times during his testimony that he spoke with Mr. Stepp. The Court believes he did so. In so finding, the Court does not consider Mr. Stepp to be less than credible; to the contrary, it recognizes his candor when admitting he simply does not recall the conversation.

The Court also considered Armstrong's argument that Mr. Coleman became "aware" of his hearing loss upon seeing counsel's advertisement. Even if that advertisement spurred Mr. Coleman to take action, it does not mean the earlier conversation with Mr. Stepp did not occur. In fact, upon rigorous cross-examination, Armstrong confronted Mr. Coleman with an answer from his deposition testimony that refers to a conversation that, in context, was most likely the one he had with Mr. Stepp.

Armstrong argues *Jenkins v. Goodyear Tire & Rubber Co.*, No. W2014-02303-SC-R3-WC, 2016 Tenn. LEXIS 175 (Tenn. Workers' Comp. Panel Mar. 15, 2016), supports its position. In *Jenkins*, the evidence revealed the employee had a hearing loss, known to him at the time of his hire, and demonstrated by his signature on multiple forms provided him after regular testing. He waited two years after his employment ended to bring a claim. The panel held:

We think a reasonably prudent person, knowing that he had significant hearing loss, which got worse through twenty-one years of employment, would not wait until two years after his last day of work to take any action, and would have sought medical advice before the various periods of limitation ran.

6

*Jenkins*, at *10.

The Court finds *Jenkins* is distinguishable. Here, Mr. Coleman testified he received no explanation regarding any hearing loss purportedly shown on his last hearing examination. There is no proof from Armstrong that he did. Moreover, there is no expert proof of what, if any, deleterious effect his exposure to noise had on his hearing. Finally, unlike the *Jenkins* employee, there is adequate evidence Mr. Coleman advised his employer of his claim while still employed. The sum of the evidence supports a finding that Mr. Coleman is likely to prevail at a hearing on the merits concerning the provision of notice to Armstrong of his alleged hearing loss.

*Causation*

Having found adequate notice, the Court turns to Armstrong's argument that Mr. Coleman failed to come forward with sufficient evidence that his hearing loss is work-related. In *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015), our Appeals Board found that the employee "[came] forward with sufficient evidence entitling her to a panel of physicians." *Id.* at *17. Namely, she reported to medical providers and the employer that she suffered injury. *Id.* The Board concluded:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians.

*Id.*[4]

In this case, Mr. Coleman testified without contradiction that he advised Mr. Stepp of issues regarding his hearing. Accordingly, Mr. Coleman, as the employee in *McCord*, has come forward with sufficient evidence at this Expedited Hearing stage of the case to entitle him to a panel of physicians to evaluate his alleged hearing loss. To hold otherwise would require Mr. Coleman "to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits." *Id.* at *10. That result is contrary to the desired fairness and efficiency of the Workers' Compensation Law. Accordingly, Armstrong must provide a panel of

---

[4] Tennessee law has long held that "the nature and extent of an employee's injuries, and the issue of medical causation, usually come to light in the course of treatment of the employee's injuries." *Ball v. Regions Fin. Corp.*, No. W2013-02454-SC-R3-WC, 2014 Tenn. LEXIS 705, at *15 (Tenn. Workers' Comp. Panel Oct. 2, 2014) *citing Quaker Oats v. Smith*, 574 S.W.2d 45, 48 (Tenn. 1978).

physicians to evaluate Mr. Coleman's alleged hearing loss.[5]

**IT IS, THEREFORE, ORDERED** as follows:

1.  Mr. Coleman shall receive medical benefits from Armstrong in the form of a panel of physicians qualified to evaluate a hearing loss from which he might choose an authorized treating physician. Mr. Coleman or the selected provider shall provide billing to Armstrong for payment.

2.  This matter is set for an Initial (Status) Hearing on August 17, 2016, at 9:00 a.m. Central time.

**ENTERED this the 7th day of June, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

---

[5] Of course, nothing herein prevents either party from presented additional evidence on the issue of causation a final compensation hearing. *See McCord* at *10.

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Workplace Solutions Pre-employment Physical Examination from April 2013;
2. Medical Records of The Jackson Clinic;
3. "Employee Hearing Test Report," November 4, 2014;
4. "Hearing Test History," November 4, 2014;
5. Separation Notice, June 17, 2015;
6. Notice of Employment Separation Form, December 1, 2009;
7. "Material Handler" Job Description;
8. "Sander Feeder" Job Description;
9. Mr. Coleman's "Employment Record" cards from 1996-2008;
10. Mr. Coleman's "Employee Record" card from 2013-2015.


Technical record:
1. Petition for Benefit Determination, filed on February 5, 2016;
2. Dispute Certification Notice, filed on March 4, 2016;
3. Request for Expedited Hearing, filed on March 4, 2016; and
4. Armstrong's Response to Motion for Expedited Hearing.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jeffrey P. Boyd, Esq. Employee's Counsel | | | X | jboyd@hillboren.com |
| William F. Kendall, Esq. Employer's Counsel | | | X | kendallr@waldrophall.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11